**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Francisco REAL–HERNANDEZ,
Defendant–Appellant.**

**No. 95–50188.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1996.

Decided July 17, 1996.

Gretchen C. von Helms, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant.

Debra R. Torres–Reyes, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.

Before: WALLACE and T.G. NELSON, Circuit Judges, and BROWNING,* District Judge.

WALLACE, Circuit Judge:

Real–Hernandez appeals from his sentence, due to the mandatory minimum sentence of 60 months imposed by the district court after he pled guilty to possession of

---

* Honorable William D. Browning, United States District Judge, District of Arizona, sitting by designation.

marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3742, and we vacate the sentence and remand for resentencing.

## I

In the early morning hours of March 11, 1994, United States Customs Agents conducting surveillance at Silver Strand State Beach in Coronado, California, discovered 13 duffel bags containing approximately 971 pounds of marijuana. They also discovered two individuals in wet suits, later identified as Real–Hernandez and Javier Medina–Perez, hiding approximately 100 yards from where the agents found the duffel bags.

The agents took Real–Hernandez and Medina–Perez into custody and informed them of their rights announced by the Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Medina–Perez waived his rights and agreed to talk with the agents. He stated that he and Real–Hernandez unloaded the marijuana from small, Zodiac-type boats and intended to hide it at a predetermined location on the beach, where others would come to pick it up. Real–Hernandez invoked his right to remain silent.

On March 23, 1994, Real–Hernandez and his co-defendant were indicted for knowingly and intentionally conspiring to possess with intent to distribute the marijuana. Real–Hernandez pled guilty to a superseding indictment on May 13. The court set sentencing for August 1, 1994.

On May 27, a probation officer interviewed Real–Hernandez. Real–Hernandez told the officer that a man whom he had known for two to three hours approached him, while he was drunk and asleep in a hotel room, and offered him $200 for a job that would take approximately 15 minutes. This man, according to Real–Hernandez, did not tell him the nature of the job, and, at that time, Real–Hernandez said he did not suspect anything illegal. It is unclear from the record whether Real–Hernandez was offered the job in Tijuana, Mexico or in San Ysidro, California, where Real–Hernandez crossed into the United States.

After he accepted the job, Real–Hernandez said the man drove him to the beach. There, Real–Hernandez unloaded two duffel bags from the boat. Only then, he said, did he realize that the bags contained marijuana. Real–Hernandez told nearly the same story at the plea hearing held May 13, 1994.

When customs agent Jacobs conferred with Real–Hernandez on July 14, 1994, at a debriefing session, he repeated that someone had driven him to the beach and told him to off-load the boat. He also reasserted that he did not initially know that he would be off-loading marijuana. The debriefing session lasted only 15 minutes. At its conclusion, Assistant United States Attorney (AUSA) Torres–Reyes told Real–Hernandez's attorney that she did not believe Real–Hernandez was telling all he knew. AUSA Torres–Reyes gave Real–Hernandez another opportunity to discuss the nature and circumstances of his involvement in the offense but, according to the government, Real–Hernandez declined.

On September 27, 1994, Real–Hernandez was charged in another case with, among other things, conspiracy to import marijuana in violation of 21 U.S.C. §§ 952, 960, and 963 (the 1993 incident). The indictment alleged that in July 1993, Real–Hernandez and others loaded approximately 18 duffel bags containing nearly 1,800 pounds of marijuana into two inflatable, Zodiac-type boats headed for Silver Strand State Beach in Coronado.

Meanwhile, the district court postponed Real–Hernandez's sentencing in this case from August 1, 1994, to January 30, 1995. At the postponed hearing, Real–Hernandez argued that he was entitled to relief from the mandatory minimum sentence pursuant to 18 U.S.C. § 3553(f), implemented verbatim at U.S.S.G. § 5C1.2. Sections 3553(f) and 5C1.2 provide that the district court shall impose a sentence without regard to the statutory minimum, if the court finds at sentencing that:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The government agreed that Real–Hernandez satisfied subsections (1) through (4), but it argued that he did not truthfully provide all information he had concerning his offense or offenses that were part of the same course of conduct or common scheme or plan. The government pointed to Real–Hernandez's involvement in the 1993 incident as evidence that he failed to provide all the information he had concerning similar conduct during the July 1994 debriefing session and interview with the probation officer.

The district court agreed that a conviction arising from the 1993 incident would indicate that Real–Hernandez had not been forthcoming about offenses that were part of the same course of conduct or common scheme or plan. The court stated:

> [T]hese boat cases are all the same. Now, they may be different boats and they may be different groups, but they're all the same. And if [Real–Hernandez] had information and didn't divulge it to the Government with regard to these boat cases, and he obviously did because he's involved in

another one ... [then] he didn't tell them about it.

Real–Hernandez argued that his involvement in the 1993 incident could not be used against him because he was presumed innocent until proven guilty. The district court agreed and therefore granted Real–Hernandez's request to continue the sentencing hearing, stating:

> If he's convicted in [the 1993 incident], he knew about it....
>
> There is just no doubt in my mind at all that he knew what he was involved in and he didn't tell [the government].... So we'll just wait and see how that other case plays out.... And if he's convicted, I'm going to tell you straight up, if he is convicted, or if he admits his guilt in that other case, then I'm certainly not going to take into consideration anything but what the Government has recommended, the mandatory minimum, and I think that is fair. When you do it twice, I think that's fair.

The district court then postponed sentencing until April 17, 1995.

On April 7, 1995, Real–Hernandez pled guilty to the conspiracy charge in the 1993 incident. He admitted that in July 1993, he loaded approximately 1,800 pounds of marijuana contained in duffel bags into two inflatable boats. He admitted that he piloted one of the boats to Silver Strand State Beach and that he was paid for his services. Based on a debriefing session with AUSA Coughlin on April 6, 1995, the government recommended that the court depart from the mandatory minimum sentence pursuant to section 5C1.2 in the case arising out of the 1993 incident.

Real–Hernandez then argued in connection with this case that his complete disclosure in the 1993 case made him eligible for relief in this case under section 5C1.2(5), also known as the "safety valve" provision. Although AUSA Torres–Reyes was not present at the April 6, 1995, debriefing, Real–Hernandez argued that his disclosure to AUSA Coughlin sufficed because "statements to *any* government agents/attorneys [ ] fulfill[ ] prong number five (5) of U.S.S.G. § 5C1.2." The probation officer agreed with Real–Hernandez and

recommended a sentence in this case below the mandatory minimum pursuant to section 5C1.2.

The government argued that it was too late for Real–Hernandez to take advantage of the safety valve. The district court agreed, stating that it would not "exercise the prerogative ... to go below the mandatory minimum in this case."

## II

We review the district court's interpretation and application of the Sentencing Guidelines de novo. *United States v. Oliver,* 60 F.3d 547, 554 (9th Cir.1995). We review for clear error the district court's factual determination that a particular defendant is eligible for relief under section 5C1.2. *United States v. Ajugwo,* 82 F.3d 925, 929 (9th Cir.1996) (*Ajugwo*).

### A.

Real–Hernandez argues before us that the district court erred by failing to provide any reasons for refusing to apply section 5C1.2. At the time of sentencing, the court merely stated, "with the knowledge that the court has in this particular case, the court feels that the appropriate sentence is ... [the] 60–month mandatory minimum." We have held in similar circumstances that such reasoning does not permit meaningful appellate review. *See United States v. Vallejo,* 69 F.3d 992, 995 (9th Cir.1995) (*Vallejo* ) (explanation that 12–month sentence "based on all the papers" was insufficient to permit meaningful review), *cert. denied,* —— U.S. ——, 116 S.Ct. 1447, 134 L.Ed.2d 567 (1996); *see also* 18 U.S.C. § 3553(c).

The government contends that the court's determination at the January 30, 1995, hearing that Real–Hernandez had not been truthful when he spoke to government agents on July 14, 1994, constitutes sufficient reasoning for refusing to depart from the mandatory minimum sentence. Section 3553(c) of Title 18 provides that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence...." 18 U.S.C. § 3553(c). In this case, the "time of sentenc-

ing" was April 17, 1995. The court's reasons for continuing the sentencing hearing on January 30, 1995, or other statements made prior to the time of sentencing, cannot provide the basis for appellate review.

Furthermore, section 3553(f) states that the court shall depart from the mandatory minimum sentence if it finds *"at sentencing "* that the defendant meets all five criteria. 18 U.S.C. § 3553(f) (emphasis added); *see also* U.S.S.G. § 5C1.2. The district court thus must provide reasons for agreeing or refusing to apply section 5C1.2 at the time of sentencing. Because the court failed to do so, we vacate the sentence and remand for resentencing. *Vallejo,* 69 F.3d at 995.

### B.

On remand, the district court may impose the sentence de novo, considering any matter or evidence relevant to sentencing, other than post-sentencing conduct. *United States v. Caterino,* 29 F.3d 1390, 1394 (9th Cir. 1994). A sentence imposed after April 17, 1995, the date of Real–Hernandez's original sentencing in this case, may be considered in determining whether Real–Hernandez qualifies for relief from the mandatory minimum sentence pursuant to section 5C1.2. *See United States v. Klump,* 57 F.3d 801, 803 (9th Cir.1995).

In addition, the district court should consider whether Real–Hernandez may benefit from the safety valve provision, even though he unquestionably failed to provide all the information he had during the July 14, 1994, debriefing session. *Compare United States v. Long,* 77 F.3d 1060, 1062 (8th Cir.1996) (denying safety valve relief to defendant who lied to government during questioning, but rectified her statement during sentencing hearing), *with United States v. Wrenn,* 66 F.3d 1, 3 (1st Cir.1995) (*Wrenn* ) (allowing district court to continue sentencing hearing to permit defendant to make a proffer to the government for purposes of satisfying section 5C1.2). As required by section 5C1.2, the court must determine whether, "not later than the time of the sentencing hearing," Real–Hernandez "truthfully provided to the Government all information and evidence

[he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f)(5).

■ The government correctly argues that section 5C1.2 requires "complete candor regarding the charged offense prior to sentencing." Indeed, to apply section 5C1.2, the district court must find that Real–Hernandez provided *all* the information available to him, regardless of whether it was useful or already known to the government. *See* U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f)(5); *see also United States v. Acosta–Olivas*, 71 F.3d 375, 379 (10th Cir.1995) (*Acosta–Olivas* ). Real–Hernandez need not meet the requirements of the acceptance of responsibility provision of the Guidelines, but he must truthfully supply details of his own culpability. *See United States v. Shrestha*, 86 F.3d 935, 939–40 (9th Cir.1996); *Acosta–Olivas*, 71 F.3d at 379.

■ We disagree with the government's contention, however, that Real–Hernandez failed to provide information to the government merely because he did not discuss his involvement in the 1993 incident with AUSA Torres–Reyes. A defendant need not disclose information to any particular government agent to be eligible for relief under section 5C1.2. "The prosecutor's office is an entity," and knowledge attributed to one prosecutor is attributable to others as well. *See United States v. Endicott*, 869 F.2d 452, 455 (9th Cir.1989), *citing Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *see also White v. United States*, 858 F.2d 416, 421 (8th Cir. 1988), *cert. denied*, 489 U.S. 1029, 109 S.Ct. 1163, 103 L.Ed.2d 221 (1989). Thus, the fact that AUSA Torres–Reyes, the prosecutor in this case, was not present when AUSA Coughlin debriefed Real–Hernandez in the 1993 incident is not relevant to the question whether Real–Hernandez provided information to the "government."

■ We also disagree with the government's argument that the debriefing session for the 1993 incident cannot be used to trigger the safety valve in this case because the 1993 incident "was a totally separate case

and was only relevant to show [Real–Hernandez] had not been truthful when he met with Government agents on July 14, 1994, and told them he did not know anything." Essentially, the government argues that Real–Hernandez did not "provide" information in the April 1995 debriefing session for purposes of benefiting from the safety valve in this case. *See* U.S.S.G. § 5C1.2(5); 18 U.S.C. § 3553(f)(5).

■ The plain language of section 5C1.2(5) allows any provision of information in any context to suffice, so long as the defendant is truthful and complete. *Id.* The Fourth and First Circuits, however, have interpreted section 5C1.2(5) to require an affirmative act of cooperation with the government before a defendant can benefit from the safety valve. *See United States v. Ivester*, 75 F.3d 182, 184 (4th Cir.1996) (holding that defendants must "demonstrate, through affirmative conduct, that they have supplied truthful information to the Government"); *Wrenn*, 66 F.3d at 3 (safety valve provision contemplates an affirmative act of cooperation with the government). Because Real–Hernandez's disclosure during the April 1995 debriefing session would satisfy even this more demanding interpretation of section 5C1.2, we need not decide whether the safety valve provision requires an affirmative act of cooperation.

■ Finally, we recognize that if on remand Real–Hernandez carries his burden of showing that he qualifies for relief under the safety valve, *Ajugwo*, 82 F.3d at 929 (burden of proof on defendant to show he meets five criteria of section 5C1.2), the district court has no discretion to withhold application of section 5C1.2. When sentencing Real–Hernandez, the district court stated that it would not "exercise [its] prerogative ... to go below the mandatory minimum." Section 5C1.2, however, states that "the court *shall impose* a sentence pursuant to [the Guidelines] without regard to any statutory minimum sentence" if the court finds that a defendant meets all five criteria. U.S.S.G. § 5C1.2 (emphasis added); 18 U.S.C. § 3553(f). This, of course, does not require the court to sentence a defendant to a term less than the mandatory minimum;

but it does require the court to sentence the defendant "without regard to any statutory minimum." *Id.* As in all other cases, the court must state its reasons for imposing a particular sentence. 18 U.S.C. § 3553(c).

In sum, we hold that on remand Real–Hernandez must show that he "truthfully provid[ed] to the Government all information and evidence [he] ha[d] concerning the offense or offenses." U.S.S.G. § 5C1.2(5); 18 U.S.C. § 3553(f)(5). He must further show that even considering the unusual pattern of sentencing hearing-delay caused by his multiple prosecutions, he provided the necessary information "not later than the time of the sentencing hearing." *Id.*

### C.

Real–Hernandez also argues on appeal that the district court should have conducted an evidentiary hearing to determine his truthfulness for purposes of applying section 5C1.2. There is no general right to an evidentiary hearing at sentencing, *United States v. Kimball,* 975 F.2d 563, 568 (9th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993), and a district court has discretion to determine whether to hold such a hearing. *United States v. Montoya,* 45 F.3d 1286, 1291 (9th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995).

Where a fact relevant to sentencing is disputed, the district court must provide the parties a "reasonable opportunity" to present information to the court. *See* Fed.R.Crim.P. 32(c)(3)(A); *see also* U.S.S.G. § 6A1.3(a). On remand, the district court may hold an evidentiary hearing to determine Real–Hernandez's truthfulness, but any such hearing is discretionary, not mandatory. *United States v. Upshaw,* 918 F.2d 789, 791 (9th Cir.1990), *cert. denied,* 499 U.S. 930, 111 S.Ct. 1335, 113 L.Ed.2d 266 (1991).

SENTENCE VACATED and REMANDED.