FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>KEVIN U. RANGEL-GUZMAN,<br>*Defendant-Appellant*. | No. 13-50059<br><br>D.C. No.<br>3:11-cr-04881-H-1<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
January 10, 2014—Pasadena, California

Filed May 28, 2014

Before: Alex Kozinski, Chief Judge, Richard R. Clifton,
Circuit Judge, and Jed S. Rakoff, Senior District Judge.[*]

Opinion by Chief Judge Kozinski

---

[*] The Honorable Jed S. Rakoff, Senior District Judge for the U.S.
District Court for the Southern District of New York, sitting by
designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction for importation of marijuana, vacated the sentence, and remanded for resentencing in a case in which the prosecutor's invocation of her own personal knowledge during cross-examination was, as the government concedes, improper.

Reviewing for plain error, the panel held that the defendant failed to demonstrate that the prosecutorial error affected his substantial rights.

The panel held that the district court didn't adequately explain why it declined to apply a two-level sentence reduction pursuant to U.S.S.G. § 2D1.1(b)(16).

### COUNSEL

Holly A. Sullivan (argued), San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney; Bruce R. Castetter, Assistant United States Attorney; William P. Cole, Assistant United States Attorney; Kyle W. Hoffman, Assistant United States Attorney (argued), San Diego, California, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

KOZINSKI, Chief Judge:

It is said that every dog has its day. Unfortunately for Kevin Rangel-Guzman, the drug detection dog at the Otay Mesa Port of Entry was having a fine day on September 5, 2011, when Rangel-Guzman and a friend attempted to re-enter the United States. The dog alerted to their vehicle, and Customs and Border Protection officers conducted a search. Officers found 91.4 kilograms of marijuana, hidden in a compartment behind the backseat. Good dog!

Rangel-Guzman and his friend were promptly arrested and interviewed separately. They both said Rangel-Guzman had borrowed the car so that they could drive from Los Angeles to Ensenada, Mexico. Rangel-Guzman, but not his friend, was charged with importation of marijuana. *See* 21 U.S.C. §§ 952, 960.

At his trial, Rangel-Guzman told a convoluted tale that differed substantially from the story he had given the border agents immediately after his arrest. He claimed that he met his Aunt Martha and cousin Daniel for the first time at a Quinceanera—a traditional Latino celebration of a girl's fifteenth birthday. During the Quinceanera, which allegedly occurred just a month prior to Rangel-Guzman's arrest, Martha invited him to a wedding in Tecate, Mexico. He claimed he went to the wedding by taking a bus from Los Angeles to Tijuana and either a taxi or another bus to Tecate, then returned to Los Angeles the same way.

The day after the wedding, he decided to return to Mexico to "have a good time." Aunt Martha agreed to lend him a car,

which he picked up at her home. Rangel-Guzman and his friend drove to his cousin Daniel's house in Tecate, where they left the car. They then took a lengthy cab ride to Ensenada, where they spent a couple hours, before returning to Daniel's house to pick up the car. Rather than re-entering the United States at Tecate, they drove to Otay Mesa, ostensibly because Daniel said it would be quicker.

During cross-examination, the Assistant United States Attorney repeatedly attempted to impeach Rangel-Guzman by referring to a meeting between herself, Homeland Security Agent Baxter, Rangel-Guzman and Rangel-Guzman's attorney. In doing so, the AUSA made it clear that she had questioned Rangel-Guzman and that he had made certain statements inconsistent with his current testimony: "You told us that you and your mother ran into Martha . . . You told us that four or five months before . . . That's what you told us last week . . . Don't you remember that I was shocked that you were saying it was four to five months before you got arrested?"

Rangel-Guzman's attorney didn't object, the district judge didn't intervene and Rangel-Guzman was convicted. On appeal, defendant argues that the prosecutor improperly vouched and violated the advocate-witness rule. Rangel-Guzman also claims that the district court erred when it held that he failed to qualify for a two-point reduction in his base sentencing level because he didn't meet the requirements of safety-valve relief. *See* U.S.S.G. §§ 2D.1(b)(16), 5C1.2(a).

## I.  The Conviction

Because Rangel-Guzman didn't object to the line of questioning he now claims was improper, we review for plain

error.  *United States* v. *Olano*, 507 U.S. 725, 731–34 (1993). Rangel-Guzman must therefore show an error that was both plain and affected his substantial rights, meaning there is a reasonable probability that, absent the error, the outcome of his trial would have been different.  *Id.* at 734–35.

### A.  Plain Error

Rangel-Guzman argues that the prosecutor engaged in improper vouching by effectively acting as a witness. Vouching occurs when a prosecutor "place[s] the prestige of the government behind the witness or . . . indicate[s] that information not presented to the jury supports the witness's testimony."  *United States* v. *Roberts*, 618 F.2d 530, 533 (9th Cir. 1980).  The advocate-witness rule prohibits attorneys from testifying in a trial they're litigating; the rule "expresses an institutional concern, especially pronounced when the government is a litigant, that public confidence in our criminal justice system not be eroded by even the appearance of impropriety."  *United States* v. *Prantil*, 764 F.2d 548, 553 (9th Cir. 1985).  We have previously found error where a prosecutor's actions might have "tak[en] advantage of the natural tendency of jury members to believe in the honesty of . . . government attorneys" even when those actions didn't "fit neatly under either the advocate-witness rule or the vouching rule."  *United States* v. *Edwards*, 154 F.3d 915, 922 (9th Cir. 1998).

The prosecutor made a number of statements that used variations on "but you told us" and "I asked you and you said," as well as assertions of fact about what had occurred during the meeting:  "Well, we went over and over it, Mr. Rangel," "[D]o you remember last week I specifically asked you multiple times who accompanied you to the

Quinceanera?" And she left no doubt about her personal feelings during the meeting: "Don't you remember that I was shocked that you were saying that it was four to five months before you got arrested [that you met Martha]?"

When a prosecutor interviews a suspect prior to trial, the "correct procedure" is to do so "in the presence of a third person so that the third person can testify about the interview." *United States* v. *Watson*, 87 F.3d 927, 932 (7th Cir. 1996). Here, Agent Baxter was present for the interview, so he could have taken the stand and testified that Rangel-Guzman had made the prior inconsistent statements. *See United States* v. *Hibler*, 463 F.2d 455, 461 (9th Cir. 1972).

Instead of calling Baxter, the prosecutor became her own rebuttal witness. By phrasing the questions as she did, she essentially testified that Rangel-Guzman had made those prior inconsistent statements. Doing so clearly took "advantage of the natural tendency of jury members to believe" in a prosecutor, *Edwards*, 154 F.3d at 922, and required the jury to "segregate the exhortations of the advocate from the testimonial accounts of the witness," *Prantil*, 764 F.2d at 553. And, because the prosecutor wasn't *actually* a witness, Rangel-Guzman had no opportunity to cross-examine her about the accuracy or truthfulness of her account.

There can be no doubt that the AUSA was asking the jury to choose whether to believe her or the defendant. This was highly improper and unfair to the defendant.

After oral argument before us, the United States Attorney "concede[d] that [the] cross-examination of defendant was error" and advised us that she "has instituted—in addition to

existing training—a semi-monthly training update for the Criminal Division regarding pre-trial and trial phases . . . in which prosecutorial error may occur." We commend the United States Attorney for the Southern District of California for her forthrightness and hope that her example will be followed by prosecutors across the circuit.

We recognize the difficulty in identifying errors absent an objection. And we understand the district court's reluctance to intervene when the opposing party, perhaps strategically, declines to do so. But the prosecutor's invocation of her own personal knowledge during cross-examination was unquestionably improper. Even absent objection, the court should have recognized this and put a stop to it. *See Henderson* v. *United States*, 133 S.Ct. 1121, 1129–30 (2013).

## B. Substantial Rights

Rangel-Guzman must demonstrate a reasonable probability that he wouldn't have been found guilty had the error not occurred. *Olano*, 507 U.S. at 734–35. The case against him was strong. He was arrested attempting to enter the United States with 91.4 kilograms of marijuana hidden in his car. His only defense was that he didn't know the drugs were there. But a border patrol agent who inspected Rangel-Guzman's vehicle testified that the backseat was "abnormally formed" and jutted out "very far." And the story Rangel-Guzman told the jury about how a large quantity of narcotics wound up stuffed in the backseat without his knowledge would have been tough to believe even had he made no prior inconsistent statements.

Rangel-Guzman's only corroboration for his convoluted tale came from the friend who had accompanied him to

Mexico.    Like Rangel-Guzman, the friend told a very different story at trial than she did to the agents when she was first arrested.  She admitted on the stand that, during her post-arrest interview, she didn't mention the existence of Rangel-Guzman's cousin, Daniel, or that Rangel-Guzman had left the borrowed car at Daniel's house.  In fact, she never said they'd gone to Tecate at all.  Instead, she told the officers that she and Rangel-Guzman had driven the car directly to Ensenada.  And she admitted during cross-examination that, by the time she told a very different story at trial, she and Rangel-Guzman had begun a romantic relationship.  Because there's no reason to believe the jury would have accepted the version of events posited by Rangel-Guzman and his friend at trial—even absent the prosecutor's erroneous cross-examination—Rangel-Guzman has failed to demonstrate that the prosecutorial error in this case affected his substantial rights.  *Olano*, 507 U.S. at 735.

## II.  The Sentence

The district court's factual determination that a defendant doesn't qualify for safety-valve relief is reviewed for clear error.  *United States* v. *Real-Hernandez*, 90 F.3d 356, 360 (9th Cir. 1996).  But the court must provide its reasons for applying or declining to apply the safety-valve provision.  *Id.*

The safety-valve provision requires the district court to impose a sentence "without regard to any statutory minimum sentence" if five factors are met.  18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2(a).  And the sentencing guidelines provide for a two-level decrease in the defendant's base offense level if the safety-valve requirements are met.  U.S.S.G. § 2D1.1(b)(16).  Although Rangel-Guzman didn't face a minimum sentence, he argues that he qualified for the

two-level decrease.  The parties agree that Rangel-Guzman satisfies the first four safety-valve factors—the only dispute is whether he "truthfully provided to the Government all information and evidence . . . concerning the offense . . . ." 18 U.S.C. § 3553(f)(5); *see also* U.S.S.G. § 5C1.2(a)(5).

We agree with Rangel-Guzman that the district court didn't adequately explain why it declined to apply the two-level sentence reduction.  The sentencing hearing began with the court discussing the government's request for an obstruction of justice enhancement.  *See* U.S.S.G. § 3C1.1. The court, the government and Rangel-Guzman's lawyer then discussed the cooperation Rangel-Guzman provided and the alleged inconsistencies between what he told the government and what he testified to.  The first mention of the safety-valve came when the district court noted its disagreement "with the defense recommendation for a safety valve . . . I don't think that he's met all the prongs of the safety valve."  The court immediately turned back to the obstruction enhancement and reviewed the evidence presented at sentencing before eventually declining to apply the obstruction enhancement.

The government argues that the same evidence speaks to both the obstruction of justice enhancement and the safety-valve provision and, consequently, the court's reasons for denying the safety-valve were included in its discussion of obstruction. The government's obstruction argument was that Rangel-Guzman committed perjury.  The prosecutor conceded that Rangel-Guzman had provided information to the government during the course of the investigation, but asserted that "the crux of our inquiry [at sentencing] is . . . his testimony at trial."

But the safety-valve provision turns on whether Rangel-Guzman provided the government with "all information and evidence . . . concerning the offense," not the veracity of his trial testimony. 18 U.S.C. § 3553(f)(5). And even if Rangel-Guzman's truthfulness at trial were an issue, the district court clearly wasn't convinced Rangel-Guzman had lied on the stand, declining to apply the obstruction enhancement. While it's possible that the district court decided that the safety-valve requirements weren't met for the same reasons that it found the obstruction enhancement was inappropriate, there is nothing in the record to indicate that is so. We decline the government's invitation to guess what the district judge was thinking.

*          *          *

Although the government admits that the prosecutor's cross-examination of Rangel-Guzman was error, Rangel-Guzman has not shown that the outcome of the trial would have been different, had the error not occurred. We therefore affirm the conviction. But, because the district court failed to adequately explain its reasons for denying Rangel-Guzman's request for a two-level reduction in his Guidelines sentence, we vacate the sentence and remand for resentencing.

**AFFIRMED in part, VACATED in part and REMANDED.**