**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

MARTIN SALAZAR,

*Defendant-Appellee*.

No. 22-50060

D.C. No.
2:18-cr-00173-
GW-DMG-66

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted February 8, 2023
Pasadena, California

Filed March 8, 2023

Before: Mary M. Schroeder, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which the district court granted Martin Salazar, who pled guilty to conspiring to distribute controlled substances within the Los Angeles County Jail system, safety-valve relief from the mandatory minimum of five years' imprisonment under 18 U.S.C. § 3553(f).

Relevant to this appeal is 18 U.S.C. § 3553(f)(5):

> [The district court must find that] not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

The panel held that the district court erred by failing to make the requisite finding to support its application of the safety valve. Section 3553(f) requires the district court to make specific findings "at sentencing," including that "the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendant has truthfully" proffered, before it can apply the safety valve. The district court made no such finding here. Instead, the district court concluded a proffer would be futile because it could not determine "what else the proffer [would] accomplish" given Salazar's limited involvement and the government's knowledge of his offenses. The panel held that this was error because there is no futility exception to the proffer requirement in § 3553(f)(5). The panel wrote that even if Salazar had no further knowledge of the conspiracy, he should have at least communicated that fact to the government in order to qualify for the reduction.

The panel wrote that even if it could indulge Salazar's request to assume that the district court implicitly found that his plea agreement constituted a sufficient proffer considering the government's independent knowledge of the offense, Salazar's plea agreement alone could not, on this record, have satisfied the proffer requirement. The panel noted that Salazar expressly acknowledged that the plea agreement's factual basis was "not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to him," and that the plea agreement raises more questions than it answers. The panel wrote that the district court's assumption regarding the nature of Salazar's offense conclusively demonstrates that his plea agreement could not suffice as a written proffer.

The panel concluded that, on this record, the district court erred in granting Salazar safety-valve relief.

**COUNSEL**

Conseulo Woodhead (argued) and Gregg Marmaro, Assistant United States Attorneys; Bram M. Alden, Assistant United States Attorney, Criminal Appeals Section Chief; Stephanie S. Christensen, Acting United States Attorney; E. Martin Estrada, United States Attorney; Office of the United States Attorney; Los Angeles, California; for Plaintiff-Appellant.

David J. Zugman (argued), Burcham & Zugman, San Diego, California; Robert H. Rexrode, Law Offices of Robert H. Rexrode, San Diego, California; for Defendant-Appellee.

**OPINION**

TALLMAN, Circuit Judge:

Martin Salazar pled guilty to conspiring to distribute controlled substances within the Los Angeles County Jail (LACJ) system. At sentencing, the district court granted Salazar safety-valve relief from the mandatory minimum of five years' imprisonment under 18 U.S.C. § 3553(f). The government appeals, arguing Salazar was ineligible for safety-valve relief because he never proffered what he knew to prosecutors as required by § 3553(f)(5). We agree and vacate Salazar's sentence and remand for resentencing.

I

A

In March 2018, the United States filed a multi-count indictment against numerous purported members of an alleged conspiracy initiated by the Mexican Mafia prison

gang to commit various crimes within the LACJ system. The indictment contained lengthy allegations concerning various coconspirators, all members of the Mexican Mafia that controlled the jails, and their drug-related activities. Martin Salazar was indicted for conspiring to possess and distribute controlled substances within the jail system. Specifically, the indictment alleged that a codefendant had smuggled 2.37 grams of heroin and 7.75 grams of methamphetamine into the LACJ system. Salazar then took possession of the drugs to hide them from deputies conducting a cell search and to further distribute them within the jail.

Salazar subsequently agreed to plead guilty to count six of the indictment: conspiring to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii). Salazar admitted the following factual basis as part of his plea agreement: (1) a conspiracy existed to distribute controlled substances within the LACJ system; (2) Salazar knowingly joined that conspiracy; and (3) Salazar furthered the goals of the conspiracy by hiding controlled substances on and in his person. Salazar acknowledged that the statutory minimum sentence for his crime was five years' imprisonment. *See* § 841(b)(1)(B).

Salazar had a lengthy criminal history when he faced sentencing. With a total offense level of 21 points and a criminal history category of VI, Salazar scored a guideline imprisonment range of 77-96 months' imprisonment, U.S. Sent'g Guidelines Manual § 5A (U.S. Sent'g Comm'n 2021), well above the mandatory minimum of 60 months. In his sentencing memorandum, however, Salazar argued he was entitled to safety-valve relief from the five-year mandatory minimum because he met all the criteria in 18 U.S.C. § 3553(f)(1)-(5). If relieved of the mandatory

minimum, Salazar argued he would also be entitled to seven points of downward departure, resulting in a guideline range of 37-46 months.  U.S.S.G. § 5A.  The government argued Salazar was ineligible for safety-valve relief because he had not yet "truthfully provided to the Government all information and evidence [he had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" as required by § 3553(f)(5).[1]

B

At the sentencing hearing, the district court sought further clarification of the precise nature of Salazar's crime and his level of culpability, notwithstanding its review of the presentencing materials and his plea agreement. Accordingly, the district court sought an explanation concerning the length and nature of Salazar's participation in the conspiracy from both parties.  Salazar's counsel argued that his client's participation in the conspiracy "began and ended on the same day."  According to defense counsel's rendition of the facts, the codefendant had himself arrested for the purposes of smuggling the drugs into the jail. After deputies removed the codefendant from his cell,

---

[1] The government also argued below, and on appeal, that Salazar was alternatively ineligible for safety-valve relief under 18 U.S.C. § 3553(f)(1) because of his extensive criminal history.  The government points out that Salazar represents precisely the kind of career offender that it argued should be ineligible for safety-valve relief in *United States v. Lopez*, 998 F.3d 431, 437-40 (9th Cir. 2021) (rejecting the government's argument and holding a defendant must have more than 4 criminal history points, a prior 3-point offense, *and* a prior 2-point violent offense to be ineligible under (f)(1)).  Because the government acknowledges this argument is presently foreclosed by *Lopez*, we decline to address it.  *See United States v. Lopez*, 58 F.4th 1108 (9th Cir. 2023) (denying petition for rehearing en banc).

Salazar took possession of the drugs ostensibly to curry favor with members of the conspiracy. Salazar's counsel also explained that while Salazar would not proffer at the hearing, counsel had previously offered to provide the government with a written proffer, but the government never responded.

Although the government did not dispute defense counsel's version of events, the government maintained its position that Salazar had not met his obligation to truthfully proffer all that he knew but also indicated that it would be satisfied with a written proffer if provided an opportunity to challenge the proffer's veracity. The district court offered a continuance for Salazar to draft a written proffer, but Salazar rejected the offer, arguing the government knew everything about the offense from his post-arrest statement, recorded jail phone calls, and plea agreement.

The district court did not "buy" Salazar's argument that his sentencing memorandum could suffice as a proffer, explaining "a proffer is a proffer." But it nevertheless "accept[ed] the defense position that [it could] utilize the safety valve" because the court agreed with the defense that the government already possessed the relevant facts. The district court then sentenced Salazar to 42 months' imprisonment. When asked by the government to clarify its reasoning for the record, the district court explained that "in this particular situation, given the nature of what transpired, . . . I don't know what else the proffer is going to accomplish."

The government appeals, arguing the district court erred by concluding that Salazar either was excused from, or had complied with, his obligation to truthfully proffer under § 3553(f)(5).

## II

"We review de novo a district court's interpretation of a statute." *United States v. Lopez*, 998 F.3d 431, 434 (9th Cir. 2021). "However, we review for clear error the district court's factual determination that a particular defendant is eligible for relief under section 3553(f)." *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996). Our review "is deferential, and we must accept the district court's factual findings unless we are 'left with a definite and firm conviction that a mistake has been made.'" *United States v. Lizarraga-Carrizales*, 757 F.3d 995, 997 (9th Cir. 2014) (quoting *United States v. Alba-Flores*, 577 F.3d 1104, 1107 (9th Cir. 2009)).

## III

## A

Safety-valve relief under § 3553(f) applies to certain enumerated drug offenses and requires the district court to "impose a sentence pursuant to [the sentencing] guidelines . . . without regard to any statutory minimum sentence" if the defendant meets the criteria listed in § 3553(f)(1)-(5). Relevant to this appeal is subsection (f)(5):

> [The district court must find that] not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the

> information shall not preclude a determination by the court that the defendant has complied with this requirement.

"Congress enacted § 3553(f) to rectify an inequity in [the drug sentencing] system, whereby more culpable defendants who could provide the Government with new or useful information about drug sources fared better . . . than lower-level offenders, such as drug couriers or 'mules,' who typically have less knowledge." *Shrestha*, 86 F.3d at 938. The safety valve "remedies this situation by [requiring] the sentencing court to disregard the statutory minimum in sentencing . . . nonviolent drug offenders who played a minor role in the offense and who 'have made a good-faith effort to cooperate with the government.'" *Id.* (quoting *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996)); *see also United States v. Rangel-Guzman*, 752 F.3d 1222, 1226 (9th Cir. 2014) (safety-valve relief mandatory when defendant meets criteria).

To that end, § 3553(f)(5) of the safety valve creates a "tell all you can tell" requirement: "the defendant must provide, prior to sentencing, all information at his disposal which is relevant to the offense, whether or not it is relevant or useful to the government's investigation." *Shrestha*, 86 F.3d at 939 (quoting *United States v. Acosta-Olivas*, 71 F.3d 375, 379 (10th Cir. 1995)). "The phrase 'all information and evidence' is quite broad. There is no limit placed on the type of information that must be provided." *United States v. Thompson*, 81 F.3d 877, 879 (9th Cir. 1996). For example, such "information includes details concerning other parties to the crime, such as the source who provided defendant with the drugs and other persons in the chain of distribution, if known." *Shrestha*, 86 F.3d at 939. "If the defendant does

not possess such information, 'he at least should [communicate] that fact to the government in order to qualify for the reduction.'"  *Id.* (alteration in original) (quoting *United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir. 1995)).

A proffer can be written or oral "because the safety valve 'allows any provision of information in any context to suffice, so long as the defendant is truthful and complete.'" *United States v. Mejia-Pimental*, 477 F.3d 1100, 1107 n.12 (9th Cir. 2007) (quoting *United States v. Real-Hernandez*, 90 F.3d 356, 361 (9th Cir. 1996)).  "Where a fact relevant to sentencing is disputed, the district court must provide the parties a reasonable opportunity to present information to the court."  *Real-Hernandez*, 90 F.3d at 362 (internal quotations omitted).  And the district court "must provide its reasons for applying or declining to apply the safety-valve provision." *Rangel-Guzman*, 752 F.3d at 1226.

## B

The district court erred by failing to make the requisite finding to support its application of the safety valve.  Section 3553(f) requires the district court to make specific findings "at sentencing," including that "the defendant has truthfully" proffered, before it can apply the safety valve.  The district court made no such finding here.  Instead, the district court concluded a proffer would be futile because it could not determine "what else the proffer [would] accomplish" given Salazar's limited involvement and the government's knowledge of his offenses.  This was error.

We hold that there is no futility exception to the proffer requirement in § 3553(f)(5).  Salazar was required to "provide, prior to sentencing, all information at his disposal which is relevant to the offense, *whether or not* it is relevant

or useful to the government's investigation." *Shrestha*, 86 F.3d at 939 (emphasis added). Although defendants are not disqualified from safety-valve relief merely because the government already possesses the relevant information, a defendant must still "provide[] all the information he possesses, regardless of whether the information assists the Government or not." *Thompson*, 81 F.3d at 881. Even if Salazar had no further knowledge of the conspiracy, he should have at least communicated "that fact to the government in order to qualify for the reduction." *Shrestha*, 86 F.3d at 939 (quoting *Rodriguez*, 69 F.3d at 143).

Futility is not a basis for circumventing § 3553(f)(5)'s proffer requirement. The district court erred by failing to find "that the defendant ha[d] *otherwise complied* with the paragraph's requirements." *Thompson*, 81 F.3d at 881 (emphasis added) (quoting H.R. Rep. No. 103-460 (1994)).

## C

Salazar urges us to assume that the district court implicitly found that his plea agreement constituted a sufficient proffer considering the government's independent knowledge of the offense and to affirm his sentence on that basis. Even if we could indulge Salazar, such a finding has no basis in the record. On this record, Salazar's plea agreement alone could not have satisfied the proffer requirement.

Salazar expressly acknowledged when he signed the plea agreement that the factual basis contained therein was "not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to" him. Consistent with this acknowledgment, Salazar's plea agreement raises more questions than it answers. For example, to support his plea of guilty, Salazar admitted to

knowingly joining a conspiracy to distribute controlled substances within the LACJ system governed by the rules of the Mexican Mafia. He also admitted that he was aware of the location of hidden drugs within the jail and secreted those drugs in his body to hide them from deputies. Based on these admissions, "it would be logical to infer that he had more information or evidence about the operation than he had previously provided." *United States v. Hieng*, 679 F.3d 1131, 1144 (9th Cir. 2012). For example, a complete proffer might have addressed the following questions: How did Salazar become aware of the ongoing conspiracy? Who are its leaders? How does it function? How do members smuggle drugs? Where and how do they hide them? How did Salazar know where the specific drugs at issue were hidden? How did he know that deputies were looking for them? The district court should not have assumed on this record that Salazar had no further relevant information.

The district court's assumption regarding the nature of Salazar's offense conclusively demonstrates that his plea agreement could not suffice as a written proffer. Although Salazar "stipulated to the basic details of his offense conduct [in his plea agreement], he made no further efforts to cooperate." *Thompson*, 81 F.3d at 880 (quoting *Arrington*, 73 F.3d at 148). His "counsel conceded as much at the sentencing hearing" when he explained that Salazar did not wish to proffer for fear of retribution. *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1150 (9th Cir. 1999).

That may well be so. Being labeled a "snitch" or a "rat" undoubtedly carries significant risks for inmates. But that is a risk Congress has established in the statutory scheme and which every defendant must face in order to qualify for

safety-valve relief.[2]  "If the defendant chooses to not comply with subsection 5, he is not entitled to application of the safety valve even though he may be a less culpable offender." *Thompson*, 81 F.3d at 879.  On this record, the district court erred in granting Salazar safety-valve relief.

## IV

The district court could not grant Salazar safety-valve relief without first finding that he had complied with the statutory proffer requirement.  On the record below, the district court did not, and could not, make that finding.  Accordingly, we **VACATE** the sentence and **REMAND** for resentencing consistent with this opinion.

---

[2] The judiciary understands these risks are a serious problem in the federal prisons, and the U.S. Judicial Conference's Task Force on Protecting Cooperators is taking affirmative steps to protect defendants who provide information to the government. *See* Jud. Conf. of the U.S., *Report of the Proceedings* 14 (Mar. 13, 2018), https://www.uscourts.gov/about-federal-courts/reports-proceedings-2010s (noting efforts "to counteract the misuse of court records to identify and harm cooperators").  These efforts include revising the judiciary's electronic records "to reduce the identification of cooperators," Comm. on Rules of Prac. and Proc., *Standing Committee Minutes* 4 (Jan. 4, 2018), https://www.uscourts.gov/rules-policies/archives/meeting-minutes/committee-rules-practice-and-procedure-january-2018; *see also* Advisory Comm. on Crim. Rules, *Report to the Standing Committee* 9 (Dec. 16, 2019), https://www.uscourts.gov/rules-policies/archives/committee-reports/advisory-committee-criminal-rules-december-2019, and revising judicial forms to avoid any public indication of a defendant's cooperator status, *see* Jud. Conf. of the U.S., *Report of the Proceedings* 12 (Sept. 17, 2019), https://www.uscourts.gov/about-federal-courts/reports-proceedings-2010s.