**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

BRIJIDO MEJIA-PIMENTAL,
          *Defendant-Appellant.*

No. 05-30604

D.C. No.
CR-99-00147-001-
RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
October 18, 2006—Seattle, Washington

Filed February 26, 2007

Before: Dorothy W. Nelson, David R. Thompson, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

2157

**COUNSEL**

Peggy Sue Juergens, Seattle, Washington, for the defendant-appellant.

John McKay, United States Attorney, and Douglas James Hill, Assistant United States Attorney, Tacoma, Washington, for the plaintiff-appellee.

---

## OPINION

PAEZ, Circuit Judge:

This case provides the occasion to explore the parameters of the statutory safety valve, which grants relief from certain mandatory minimum sentences when five criteria are met. *See* 18 U.S.C. § 3553(f). We have previously decided that the fifth factor, which requires a defendant to "truthfully provide[ ]" all his knowledge about the crime to the Government before sentencing, *see* § 3553(f)(5), is aimed at defendants "who 'have made a good-faith effort to cooperate with the government.' " *United States v. Shrethsa*, 86 F.3d 935, 940 (9th Cir. 1996) (quoting *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996)). We have never, however, defined precisely what "good faith" means in this context. We now hold that to demonstrate "good faith," a defendant need only show what the statutory language directs: that by the time of sentencing, he has "truthfully provided to the Government all information and evidence [he] has concerning the offense or offenses." § 3553(f)(5). In this case, the district court construed good faith too broadly in determining that Mejia-Pimental was ineligible for relief. Because the court thus erred in its application of the safety valve and then sentenced Mejia-Pimental with reference to a mandatory minimum term, we vacate his sentence and remand for resentencing.[1]

---

[1]We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

I. Overview

This is the third time that Brijido Mejia-Pimental has appealed his sentence.[2] Not surprisingly, the procedural posture is somewhat complicated. In April 1999, a grand jury indicted Mejia-Pimental and four co-defendants on multiple counts for participating in a large drug trafficking conspiracy involving cocaine, heroin, and methamphetamine. Conviction on several of these charges triggers a 120-month mandatory minimum sentence unless the defendant can demonstrate eligibility for the safety valve.[3] Mejia-Pimental pled guilty in November 1999; in the plea agreement, the Government acknowledged Mejia-Pimental's eligibility for the safety valve so long as he "provided a truthful statement to the government" about the crime — in accordance with § 3553(f)(5). Mejia-Pimental withdrew his plea, however, when the district court rejected the plea agreement because Mejia-Pimental had "lied about his uncle's involvement in the criminal enterprise and the extent to which he even knew his uncle."[4]

A jury convicted Mejia-Pimental of all counts. On February 2, 2001, the Honorable Jack E. Tanner sentenced Mejia-Pimental to 210 months in prison. On appeal, we reversed and remanded for resentencing because the district court had failed to resolve "significant . . . objections" to the PSR. *See United States v. Mejia-Pimental*, 60 F. App'x 687, 689 (9th Cir. 2003). On remand, Judge Tanner imposed the same sen-

---

[2]Also pending before us are two motions. We deny Mejia-Pimental's informal motion, contained in his Reply Brief, to strike references to the Presentence Report ("PSR") from the Government's brief, and we grant his motion to correct the docket to reflect accurately the date on which he submitted sealed appellate exhibits.

[3]21 U.S.C. § 841(b)(1)(A) establishes a ten-year minimum sentence for conspiracy to distribute heroin and possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a).

[4]Mejia-Pimental's uncle, Cristino Tejeda-Mejia, whom both parties acknowledge as the "true and ultimate leader" of the drug conspiracy, was later indicted separately on lesser charges.

tence. We again reversed and remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), and our panel opinion in *United States v. Ameline*, 400 F.3d 646 (9th Cir. 2005).[5] *See United States v. Mejia-Pimental*, 122 F. App'x 382 (9th Cir. 2005). Over the course of this procedural roller coaster, Mejia-Pimental's co-defendants all pled guilty and received sentences of two years or less. His uncle, Cristino Tejeda-Mejia, pled guilty, according to an affidavit from Tejeda-Mejia's attorney, to "one count of possession of a listed chemical (pseudoephedrine)" and received thirty-months imprisonment.

Before his third sentencing hearing, Mejia-Pimental contacted the Government and offered to provide an in-person safety valve proffer. The Government refused, primarily because Mejia-Pimental had previously lied and declined to cooperate, and because his uncle had already pled guilty, rendering the information useless. In response, Mejia-Pimental wrote a letter to the Government detailing his involvement in the charged offenses, as well as his knowledge of the involvement of others, including his uncle. On December 6, 2005, a different district court judge, the Honorable Ronald B. Leighton, held a full resentencing hearing and found that Mejia-Pimental had not met the five criteria for safety valve eligibility. Specifically, the court found that Mejia-Pimental had failed to satisfy the safety valve's fifth requirement — truthfully providing the Government with complete information. *See* 18 U.S.C. § 3553(f)(5). Although the Government did not contend, and the district court did not find, that Mejia-Pimental's proffer letter was false or incomplete, the court reasoned that

> the government sought defendant's help in the case against his uncle, and defendant declined. Now, after the uncle has been convicted on a lesser charge,

---

[5]This decision was subsequently superceded by an en banc opinion. *See United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).

> defendant, at his third sentencing, wants to tell all he knows and to obtain the benefit of the safety valve.
>
> This court does not believe that this effort represents a good faith cooperation with the government and the court does not accept the proffer.

The district court "add[ed] that even if the defendant was safety valve eligible, the court would not, under the circumstances of this case, be inclined to go below that statutory mandatory minimum." The court sentenced Mejia-Pimental to 156-months imprisonment — 36 above the mandatory minimum. Mejia-Pimental timely appealed, arguing that he had satisfied the fifth safety valve factor, that the district court's interpretation of the safety valve statute was incorrect, and that the court therefore erred in considering the mandatory minimum when calculating his sentence.

## II. STANDARD OF REVIEW

We review " 'the district court's interpretation of the Sentencing Guidelines de novo.' " *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005)). Although we "review for clear error the district court's *factual* determination that a particular defendant is eligible for relief" under the safety valve, *United States v. Real-Hernandez*, 90 F.3d 356, 360 (9th Cir. 1996) (emphasis added), we review de novo the district court's statutory interpretation of § 3553(f)(5), *see Cantrell*, 433 F.3d at 1279. *See also United States v. Ferryman*, 444 F.3d 1183, 1185-86 (9th Cir. 2006) (reviewing determination of safety valve eligibility for clear error but independently interpreting "[t]he phrase 'in connection with' " as a question of law); *Shrethsa*, 86 F.3d at 938-40 (noting that whether defendant had been completely truthful for purposes of § 3553(f)(5) was a factual matter, but "deem[ing legally] irrelevant" defendant's "denial of guilty knowledge at trial").

### III.   DISCUSSION

**[1]** The safety valve statute provides that

> the court shall impose a sentence pursuant to guide-lines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that —

> (1)   the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

> (2)   the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

> (3)   the offense did not result in death or serious bodily injury to any person;

> (4)   the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

> (5)   not later than the time of the sentencing hearing the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that

the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); *see also* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 5C1.2.[6] The defendant bears the burden of proving safety valve eligibility by a preponderance of the evidence. *See United States v. Franco-Lopez*, 312 F.3d 984, 994 (9th Cir. 2002); *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000). In this case, the district court denied relief solely on the basis of its finding that Mejia-Pimental failed to satisfy the fifth safety valve factor.[7]

1.  *"Good Faith" Under 18 U.S.C. § 3553(f)(5)*

The Government has never suggested that Mejia-Pimental's final proffer was false or incomplete.[8] Instead, the Govern-

---

[6]We recently confirmed that the statutory safety valve "survives the Supreme Court's holding [that the Sentencing Guidelines are advisory] in *Booker*," 543 U.S. 220 (2005), and that we must "continue [to ensure], in accordance with congressional intent, [that district courts] apply its relief from mandatory minimums in appropriate cases." *United States v. Cardenas-Juarez*, 469 F.3d 1331, 1335 (9th Cir. 2006).

[7]In its brief, the Government asserts that the district court erred in finding that Mejia-Pimental satisfied the fourth safety valve requirement — not being a leader or organizer. However, as the Government conceded at oral argument, it waived this claim by not objecting before the district court, so we do not address it here. *See United States v. Vieke*, 348 F.3d 811, 814 (9th Cir. 2003).

[8]Although Mejia-Pimental did not provide the proffer until just prior to his third sentencing hearing, the district court correctly considered it, because

as a general matter, if a district court errs in sentencing, we will remand for resentencing on an open record — that is, without limitation on the evidence that the district court may consider. . . . [T]he district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo.

ment's complaint is that the "statement provided information already known to the government about his co-defendants . . . [and] his uncle." Similarly, the district court "t[ook] a broad[ ]" interpretation of the statute, finding that in light of Mejia-Pimental's earlier disobliging behavior, this most recent effort, after all his co-conspirators had already pled guilty, did not "represent[ ] good faith cooperation." In short, the district court found, and the Government now argues, that because Mejia-Pimental lied in his initial proffer, and then delayed disclosing additional information until after his uncle and co-defendants were sentenced, he cannot demonstrate the "good faith" that § 3553(f)(5) demands.[9]

In interpreting subsection five, we have already decided that as long as the defendant provides truthful, complete information before sentencing, previous lies and omissions will not render him ineligible for the benefit of the safety valve. *See Shrethsa*, 86 F.3d at 940. We have also, however, held that Congress intended the safety valve to benefit offenders who " 'have made a good-faith effort to cooperate with the government.' " *Id.* (quoting *Arrington*, 73 F.3d at 147). In *Shrethsa*, the defendant had initially confessed all his knowledge and involvement, but then recanted that confession at trial. 86 F.3d at 940. We held that the recantation did not disqualify him from obtaining safety valve relief, but specifically did "not decide" whether a defendant who "provided information for the first time at sentencing merely in order to take advantage of the safety valve provision," or whose tardiness "de-

---

*United States v. Matthews*, 278 F.3d 880, 885-86 (9th Cir. 2002) (en banc) (citations omitted); *see also United States v. Madrigal*, 327 F.3d 738, 744-46 (8th Cir. 2003) (holding that defendant who gave proffer after a continuation of the sentencing hearing remained safety valve eligible).

[9]Mejia-Pimental argues that the district court's factual determination that he lied to the Government is clearly erroneous. Because he raised this issue for the first time in his Reply Brief, we consider it waived. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam).

prive[d] the Government of information" would likewise qualify. *Id.* at 940 n.5. Mejia-Pimental's situation presents this question, and we answer it in the affirmative.

**[2]** The breadth of the "good faith" requirement in the context of the safety valve is limited by the boundaries of the statutory language; that is, a defendant satisfies his "good faith" obligation by providing the Government with truthful, complete information by the time of the sentencing hearing. Anything else would unjustifiably impose on a defendant an additional burden above and beyond the plain meaning of the text of § 3553(f). In reaching this conclusion, we are persuaded by the Second Circuit's decision in *United States v. Schreiber*, 191 F.3d 103 (2d Cir. 1999). There, reviewing a factual scenario similar to Mejia-Pimental's, the court held that "lies and obstruction" before sentencing do not preclude safety valve eligibility. *Id.* at 106, 108-09.

*Schreiber* involved a defendant who had lied during "at least two proffer sessions[,] . . . in part . . . to protect his brothers [ ] from prosecution." *Id.* at 104. Later, the defendant offered a new proffer, but the Government refused to meet with him. *Id.* at 105-06. "Shortly prior to sentenc[ing]," approximately seven years after the initial arrest, the defendant "forwarded two documents which he claims constitute truthful disclosure of all the information and evidence he had concerning the conspiracy, thus bringing him into compliance with the safety valve statute." *Id.* at 105. The court held that

> [a]ssuming that appellant's final proffers were complete and truthful, we find that appellant complied with subsection five by coming forward "not later than the time of the sentencing hearing." 18 U.S.C. § 3553(f)(5). The plain words of the statute provide only one deadline for compliance, and appellant met that deadline. Nothing in the statute suggests that a defendant is automatically disqualified if he or she previously lied or withheld information. Indeed, the

text provides no basis for distinguishing among defendants who make full disclosure immediately upon contact with the government, defendants who disclose piecemeal as the proceedings unfold, and defendants who wait for the statutory deadline by disclosing "not later than" sentencing. Similarly, the text provides no basis for distinguishing between defendants who provide the authorities only with truthful information and those who provide false information before finally telling the truth.

*Id.* at 106.[10]

**[3]** We find this reasoning convincing. Under our reading of the statute, the good faith inquiry focuses on the defendant's cooperation in fully disclosing his knowledge of the charged offense conduct, not on identifying a defendant's pre-sentencing delays in providing this information.[11] A defendant

[10]*See also United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000) ("Nothing in the statute suggests that a defendant who previously lied or withheld information from the government is automatically disqualified from safety-valve relief."); *United States v. Tournier*, 171 F.3d 645, 646-48 (8th Cir. 1999) (rejecting an interpretation of § 3553(f)(5) that would "prohibit sentencing courts from applying the safety valve to defendants who wait until the last minute to cooperate fully [or] . . . to those whose tardy or grudging cooperation burdens the government with a need for additional investigation").

[11]A review of relevant cases from our sister circuits confirms that good-faith cooperation refers to cooperation in the disclosure itself. *See, e.g.*, *United States v. Warren*, 338 F.3d 258, 263-67 (3d Cir. 2003) (noting the "good-faith effort" requirement and affirming a finding of safety valve ineligibility when defendant failed to cooperate fully); *United States v. Matos*, 328 F.3d 34, 41 (1st Cir. 2003) (same, where it was undisputed that the ultimate proffer included "contradictions and omissions"); *United States v. Reynoso*, 239 F.3d 143, 149-50 (2d Cir. 2000) (same, where defendant provided information that was in fact "objectively false"); *United States v. Gonzales-Montoya*, 161 F.3d 643, 652 (10th Cir. 1998) (same, where defendant refused to "confess[ ] guilt"); *United States v. Gaviria*, 116 F.3d 1498, 1522 & n.35 (D.C. Cir. 1997) (same, where

might, for example, agree to a proffer but refuse to answer questions or answer them evasively, even though the Government believes (or knows) that the defendant's involvement in the criminal conduct was more extensive than the proffer suggests. Such behavior would not constitute good faith because it would not provide the Government with a truthful, complete disclosure. *See United States v. Washman*, 128 F.3d 1305, 1307 (9th Cir. 1997) (noting that "[t]he intent of Congress would be thwarted if defendants could obtain the benefit of the safety valve yet not disclose their true role"). Conversely, as long as a defendant's ultimate proffer is truthful and complete, he has satisfied the fifth safety valve criterion, regardless of his timing or motivations.

**[4]** *United States v. Arrington*, 73 F.3d 144 (7th Cir. 1996), the case from which we borrowed the "good faith" language in *Shrethsa*, 86 F.3d at 940, further supports the view that "good faith" refers only to full disclosure. There, the Seventh Circuit emphasized the defendant's failure to provide an adequate proffer:

> Baker has not fulfilled the requirements of 3553(f). Although he stipulated to the basic details of his

defendant had perjured himself at trial and pre-sentencing but did not correct those lies with any additional information); *United States v. Gambino*, 106 F.3d 1105, 1110-12 (2d Cir. 1997) (same, where defendant "failed to provide [certain] information regarding the offense of conviction").

In *Shrethsa*, we "observ[ed]" that the Fourth Circuit had interpreted "good faith" more broadly in *United States v. Fletcher*, 74 F.3d 49 (4th Cir. 1996), a case in which it affirmed a "district court's denial of safety valve reduction where a defendant perjured himself at trial but 'came clean' at sentencing." *Shrethsa*, 86 F.3d at 940 n.5. For the reasons articulated in this opinion, we decline to follow *Fletcher*. Moreover, in *Shrethsa* we noted that *United States v. Long*, 77 F.3d 1060, 1062 (8th Cir. 1996), also construed "good faith" in a broader fashion. The Eighth Circuit has since distinguished that case on its facts, emphasizing that as long as the defendant has come clean before sentencing, previous lies will not disqualify him. *See Tournier*, 171 F.3d at 648.

> offense conduct, he made no further efforts to coop-
> erate. He failed to respond to a proffer letter sent by
> the government outlining the terms that would apply
> (*e.g.* limited immunity) if he provided additional
> information. Furthermore, he did not initiate any
> contact with government officials offering to provide
> details of his involvement in drug dealing. Specifi-
> cally, the government notes that Baker could have at
> least provided the name of the "source" who sold
> him the crack cocaine. Before granting relief under
> 3553(f), the court may reasonably require a defen-
> dant to reveal information regarding his chain of dis-
> tribution. . . . Baker argues that he should not be
> required to reveal information that the government
> did not specifically ask him to provide. . . . Although
> Baker is not required to provide information that the
> government expressly states that it does not want, he
> must at least offer what he has.

*Arrington*, 73 F.3d at 148. The district court in this case used
*Arrington* to adopt "a broader principle" about the "good
faith" requirement, but it stretched the Seventh Circuit's rea-
soning beyond what the opinion in fact supports. Where the
defendant in *Arrington* was uncooperative, even failing to
respond to a written proffer invitation sent by the Govern-
ment, 73 F.3d at 148, Mejia-Pimental volunteered the details
of his knowledge and participation. Assuming his proffer was
truthful and complete, it is sufficient.[12] *Cf. United States v.
Otis*, 127 F.3d 829, 836 (9th Cir. 1997) (per curiam) (affirm-
ing the district court's determination that the defendant had
not satisfied § 3553(f)(5) when he offered a proffer in
exchange for a misdemeanor plea, the Government refused,

---

[12]That the proffer was written and not oral is of no consequence,
because the safety valve "allows any provision of information in any con-
text to suffice, so long as the defendant is truthful and complete." *Real-
Hernandez*, 90 F.3d at 361 (holding that a debriefing session from an ear-
lier incident constituted an adequate proffer).

and the defendant made no further efforts to disclose his knowledge).

As posited by the Government and the district court, good-faith cooperation in the context of the safety valve forbids deliberate delays in the timing of the proffer or attempts to impede law enforcement investigation. The advisory Sentencing Guidelines, however, already address such conduct through other provisions, such as the enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1; the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1; and the departure for substantial assistance, *see* U.S.S.G. § 5K1.1. We see no evidence that through the safety valve Congress or the Sentencing Commission intended to duplicate them. *See Shrethsa*, 86 F.3d at 940 (noting that the safety valve statute differs from a § 5K1.1 substantial assistance departure, which "provid[es] the government with a means to reward a defendant for supplying useful information"); *Schreiber*, 191 F.3d at 108 (reasoning that even if "the government's interest in disclosure could justify penalizing defendants who lie or withhold information during proffer sessions, a similar scheme already exists independent of the safety valve. . . . The text of § 3553(f) is devoid of any suggestions that the safety valve is meant to supplement § 3C1.1.") (citing U.S.S.G. § 3C1.1 (obstruction of justice)). Further, to the extent that this conduct is not fully captured by the advisory Guidelines, the factors listed in 18 U.S.C. § 3553(a) allow district courts to account for reluctant cooperation by tailoring individual sentences accordingly.[13] *See United States v. Booker*, 543 U.S. 220 (2005).

---

[13]*See, e.g.*, 18 U.S.C. § 3553(a)(1) ("the nature and circumstances of the offense and the history and characteristics of the defendant"); § 3553(a)(2)(A) ("the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); § 3553(a)(6) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

**[5]** More importantly, the safety valve statute's text, which explains that "the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude" eligibility, 18 U.S.C. § 3553(f)(5), prohibits reading the provision to allow any consideration of the proffer's effect on law enforcement investigations. Policy concerns about the need for defendants to cooperate in the most helpful and efficient manner with the Government do not present a compelling justification for stretching the plain meaning of the statute. In *Schreiber*, the court rejected the Government's contention that "the defendant's good faith cooperation is to be evaluated, as a whole, from the start of the criminal proceeding" because "[a] defendant who could gain the benefit of the safety valve in such a case would have a reduced incentive to tell the truth." *Schreiber*, 191 F.3d at 107. We agree with the Second Circuit that these "concerns" are "largely theoretical" because a defendant who lies "risks irrevocably undermining his or her credibility" such that the district court will find, as a factual matter, that his disclosure was incomplete, or that the "lies will be exposed at the sentencing hearing itself, thus disqualifying the defendant from relief." *Id.* Therefore, although Mejia-Pimental's tardiness thus may have sentencing consequences, as the Eighth Circuit put it, early and consistent cooperation is "not a precondition for safety valve relief." *Tournier*, 171 F.3d at 647.

**[6]** In lying initially, Mejia-Pimental took a risk that the district court would not believe that his ultimate proffer was truthful and complete. The district court had ample channels through which to address Mejia-Pimental's lies or the timing of his proffer — not least its broad sentencing discretion under § 3553(a). The duty of "good-faith efforts to cooperate" that we have placed on defendants seeking to satisfy § 3553(f)(5), however, was not one of them. This reasoning supports our longstanding view that unlike the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, "[t]he safety valve is not concerned with sparing the government the

trouble of preparing for and proceeding with trial." *Shrethsa*, 86 F.3d at 940. Section 3553(f)(5) does not impose "some overrarching duty of good faith cooperation," *see United States v. Jeffers*, 329 F.3d 94, 99 (2d Cir. 2003) (citation omitted), but instead is a simple duty of "good-faith effort[s]" to "provide the government with complete information by the time of the sentencing hearing," *Shrethsa*, 86 F.3d at 940. The district court therefore erred, as a matter of law, in finding Mejia-Pimental ineligible for safety valve relief on the basis of the lies and delays that preceded his final proffer.

2. *Reversible Error*

**[7]** "Where we discover an error not of constitutional magnitude, we must reverse unless there is a fair assurance of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Gonzales-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005) (citation, alterations, and internal quotation marks omitted). When, as here, the defendant has properly preserved the sentencing error, the burden of demonstrating harmlessness falls on the Government. *Id.* Errors in the determination of safety valve eligibility require resentencing even where the district court has indicated that it would not have sentenced below the mandatory minimum. In *United States v. Real-Hernandez*, the district court interpreted the safety valve statute incorrectly but had also stated that "it would not 'exercise its prerogative to go below the mandatory minimum' " in any case. 90 F.3d at 361 (alterations omitted). We reversed nonetheless, emphasizing that "if on remand [the defendant] carries his burden of showing that he qualifies for relief under the safety valve, the district court has no discretion to withhold application" of it. *Id.* (citation omitted). Despite the district court's suggestion it would have sentenced above the mandatory minimum under any circumstances, we held that the safety valve statute

> states that "the court *shall impose* a sentence pursuant to [the Guidelines] without regard to any statu-

tory mandatory minimum sentence" if the court finds that a defendant meets all five criteria. This, of course, does not require the court to sentence a defendant to a term less than the mandatory minimum, but it does require the court to sentence the defendant "without regard to any statutory minimum."

*Id.* at 361-62 (citations omitted).

**[8]** In other words, the fact that a district court used the mandatory minimum as a reference point requires resentencing if the defendant was in fact safety valve eligible. Such a result makes sense. Mandatory minimums impose stringent starting points on district courts' sentencing authority. The type of discretion afforded a court that is restrained by a statutory minimum is wholly unlike that afforded one that is not. It is therefore impossible for appellate courts to determine how a district court sentencing under a mandatory minimum might have exercised its sentencing discretion had it not been so constrained. Thus, the court's consideration of the mandatory minimum term in fashioning Mejia-Pimental's sentence constitutes reversible error. The Government offers no evidence other than the district court's comment that it was not "inclined to go below that statutory mandatory minimum" even if Mejia-Pimental were "safety valve qualified" to demonstrate that the error was harmless. In light of *Real-Hernandez*, the Government cannot meet its burden on this record.

Although the Government has never asserted that Mejia-Pimental's final proffer was false or incomplete, the district court did not reach this issue. Instead, the court "did not accept the proffer" because it found that Mejia-Pimental had failed to satisfy a "broader" duty of good-faith cooperation. Therefore, on remand, the district court must consider whether that final written proffer was in fact truthful and complete. If so, while the court is not bound to a term of less than

ten years, it must nevertheless sentence Brijido Mejia-Pimental "without regard to" the 120-month mandatory minimum.[14]

**VACATED AND REMANDED FOR RESENTENCING.**

---

[14]In light of our disposition, we need not address Mejia-Pimental's claim that his sentence of 156 months was unreasonable.