PHILLIPS, Circuit Judge,
dissenting:
I agree with the majority that the text of 18 U.S.C. § 3553(f) permits a defendant to request safety-valve relief for the first time at a resentencing. But I disagree with the majority that a defendant may support that request with safety-valve information first provided to the government after the initial sentencing hearing. The plain language of § 3553(f)(5), and our case law interpreting it, requires full and truthful disclosure before the initial sentencing hearing begins. Because I conclude that the district court did in fact consider Fi *1304 gueroa’s safety-valve request at the resentencing hearing and properly denied it because Figueroa had failed to disclose the necessary safety-valve information before his initial sentencing hearing, I respectfully dissent.
I. Safety-Valve Relief and Resentencing
Under 18 U.S.C. § 3742(f)(1), we remand for “further sentencing proceedings” if we conclude that a district court erred in imposing a sentence. Under § 3742(g), “[a] district court to which a case is remanded pursuant to subsection (f)(1) ... shall resentenee a defendant in accordance with section 3553 and with such instructions as may have been given by the court of appeals....” Nothing suggests that a district court may pick and choose what parts of § 3553 to apply at resentencing. Because the safety-valve provision is found within § 3553, I conclude that a district court must consider safety-valve eligibility at any resentencing if a defendant seeks it.[1] See United States v. Verners, 103 F.3d 108, 110 n. 3 (10th Cir.1996) (finding that safety-valve relief under USSG § 5C1.2 “is not discretionary; it requires a departure from the minimum sentence on finding that certain conditions are met.”).
II. Timely Disclosures Under § 3553(f)(5)
This appeal raises a single question:[2] What does 18 U.S.C. § 3553(f)(5) mean when it requires that “not later than the time of the sentencing hearing” a defendant has fully and truthfully provided to the government all information and evidence he has about his offense or offenses? The district court concluded, and the government now argues,[3] that the time for disclosing the necessary information ended when Figueroa’s original sentencing hearing began. In other words, the district court concluded that § 3553(f)(5)’s time limit of “not later than the time of the sentencing hearing” did not stretch forward to allow disclosure of safety-valve information long after the initial sentencing commenced. I agree with this view.
*1305 A. The plain language of’§ 3553(f) and our court’s precedent forecloses any opportunity for Figueroa to make first-time safety-valve, disclosures on remand.
I would affirm because I believe — as supported by a key Tenth Circuit case— that the district court properly interpreted the plain language of 18 U.S.C. § 3553(f)(5). In United States v. Acosta-Olivas, 71 F.3d 375 (10th Cir.1995), the district court awarded safety-valve relief[4] to Acosta-Olivas after requiring that he truthfully disclose only his own offense conduct, but not that of his co-conspirators. Id. at 377. Because the district court erred by limiting the required disclosure, this court remanded “this case with instructions to vacate the sentence and resentence.” Id. at 379-80. Because this court could not tell whether the district court’s legal error had caused Acosta-Olivas’s incomplete disclosure, we remanded as follows: “If, at resentencing, the court makes a factual finding that, in deciding what information to disclose to the government, Mr. Acosta-Olivas relied upon the district court’s interpretation of § 3553(f)(5), the court shall allow him the opportunity to comply with the statute as this court has interpreted it in this opinion.” Id. at 380.
The upshot of this remand language from Acosta-Olivas seems straightforward. Because we allowed Acosta-Olivas to produce more evidence about his co-conspirators’ activities if the district court’s error had caused him to withhold that information, it sensibly follows that we disallowed him to produce the additional information if the district court’s error did not cause his deficient disclosure. For a variety of reasons, I conclude that Acosta-Olivas meant just exactly that.
First, the plain language of § 3553(f)(5) requires full disclosure of information to the government “not later than the time of the sentencing hearing.” (emphasis added.) The majority treats the article “the” as unimportant, instead choosing to focus on the words “sentencing hearing.” Maj. Op. at 1306-07. But “the” matters. After all, it is our duty to give effect, if possible, to every clause and word of a statute. Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). The singular “the” lends support to an interpretation that “the sentencing hearing” refers to one sentencing hearing — which, because it is the first one, must be the original sentencing hearing.
Second, other circuits examining Acosta-Olivas construe it the same way that I do. They view Acosta-Olivas’s remand instruction as carving an interest-of-justice exception to a general rule prohibiting a defendant from disclosing additional safety-valve information at resentencings. See United States v. Madrigal, 327 F.3d 738, 746-47 (8th Cir.2003) (stating that “the Tenth Circuit [in Acosta-Olivas ] has suggested that a defendant, under the right circumstances, may also qualify for safety valve relief if the defendant comes clean at resentencing.” (emphasis added)); United States v. Flanagan, 80 F.3d 143, 147 (5th Cir.1996) (citing Acosta-Olivas and allowing the defendant an opportunity on remand to disclose truthful information for safety-valve relief if the district court’s legal error in placing the burden of proof on the government led to Flanagan’s not fully disclosing information at his original sentencing hearing, and barring safety-valve relief if not).
*1306 Third, I agree with the government that it would be an odd result to disallow Figueroa from proffering safety-valve disclosures after his original sentencing hearing had begun, but then to allow him to do so months later. See Appellee’s Br. at 17-18. In fact, our precedent emphasizes the sound policy of requiring a defendant to disclose information before the original sentencing. In United States v. Galvon-Manzo, 642 F.3d 1260, 1268 (10th Cir. 2011), we approved of a general safety-valve policy as “serving] the government’s interest in full, truthful disclosures from defendants about their own and related criminal conduct.” Clarifying this, we noted that “[florcing the government to wait until the middle of a sentencing hearing before it obtains such informátion interferes with that policy and forces the government to conduct further investigations to determine the truthfulness of the disclosures.” Id.
Consequently, we did not permit a defendant to disclose additional safety-valve information — even during his original sentencing hearing — because “a defendant may lie to the government and still qualify for safety valve relief merely by altering his story at sentencing in order to comport with the evidence presented by the government during the hearing.” Id. (quoting United States v. Marin, 144 F.3d 1085, 1095 (7th Cir.1998)). Accordingly, given the importance of the timeliness of fully truthful- disclosure, contrasted with Figueroa’s long delay in disclosing, I believe these policy grounds also are consistent with my interpretation of Acostar-Olivas.
Fourth, showing that Acosta-Olivas meant what it said, this court 16 years later said it again in Galvon-Manzo, 642 F.3d at 1268. That case involved two men stopped for speeding in a car containing 12 kilograms of cocaine in a hidden compartment. Id. at 1262. The two men had been in regular contact with a California source subject to a Drug Enforcement Administration (DEA) wiretap; law enforcement had intercepted multiple calls between the defendants and the drug source. Id. When police arrested them, the defendants denied knowing the cocaine was in their car. Id. Then, afterward, both defendants failed to truthfully disclose information during debriefing proffers with the DEA-where agents specifically informed the defendants that a sentence reduction depended on their providing honest information. Id. at 1263. Before sentencing, GuzmanManzo emailed an affidavit to the government providing only limited details about his drug activity. Id. At sentencing, his counsel requested that Guzman-Manzo be “afforded another opportunity to provide a statement to the government,” which I understand to mean another chance to sit down for a debriefing proffer. Id. at 1264.
The district court denied this request, saying that “in view of the fact that there have been two dishonest attempts, I would not be prepared to give any credence to what he said the third go around....” Id. The district court declared the two defendants ineligible for safety-valve relief, pointing to their failed proffers and lack of credibility. Id. at 1265. In response to Galvon-Manzo’s statement that he was “prepared today at sentencing” to clarify his and "his co-defendant’s role in the of■fense, the district court replied:
[Tjhere comes a time when this ends.... Two opportunities, now when it is clear that his misstatements and omissions and flat-out falsehoods have been revealed, now is not the time when a defendant can come in and say, “All right, I was dishonest before, but now in front of you, judge, I’ll tell the truth.” I would view that with some skepticism, and that is not the purpose of this.
Id.
The Galvon-Manzo court held — as a matter of first impression — that “the reso *1307 lution of disputes arising out of or relating to the debriefing process lies "within the sound discretion of the district court.” Id. at 1267. In this regard, it explained that “the district court may exercise discretion to determine whether a particular defendant should be entitled to one, two or several debriefing sessions.” Id. Next, addressing a separate issue of timeliness of a defendant’s safety-valve disclosures, the court also held that “generally speaking, any and all disclosures for safety-valve purposes are timely only if they occur prior to the commencement of the sentencing hearing.” Id. (emphasis added) (citations omitted). Under these standards, the court concluded that the district court had not erred in its “refusal to allow Guzman-Manzo to make further disclosures after the sentencing hearing commenced, in an effort to obtain safety-valve relief.” Id. at 1268-69.
On appeal, relying on Acostar-Olivas, Guzman-Manzo argued “if [the Tenth Circuit] conclude[s] that ‘disclosure at or during the sentencing hearing is not timely, such a pronouncement should be effective prospectively and should not preclude the defendant from attempting to comply with such a reading of the statute on remand.’ ” Id. at 1269 n. 5 (citation omitted). In essence, he argued that because any such rule was not effective at his sentencing, it should not bind him.
Important for our purposes, the Galvon-Manzo court commented on the meaning of Acostar-Olivas: “We allowed the defendant in Acosta-Olivas on remand and at resentencing to comply with the safety-valve provision if the court, at resentencing, found that the defendant had relied upon -an erroneous interpretation of the statute by the district court at the initial sentencing.” Id. (emphasis in original). The court declined to remand, concluding that the district court had “provided no such erroneous interpretation and we see no reason to remand the matter for resentencing.” Id. The court further concluded that the district court “did not decide against Guzman-Manzo because he was seeking to provide the information too late (i.e., after the sentencing hearing commenced) but because the district court decided that he was simply not reliable and truthful.” Id.
I share the Galvon-Manzo court’s understanding of Acosta-Olivas. In Galvon-Manzo, the court italicized the “if’ — emphasizing the condition on the district court’s allowing additional safety-valve disclosures at a resentencing. Id. As did Acosta-Olivas, the court spoke of when a defendant is “allowed” to do so. Here, like Guzman-Manzo and unlike Acosta-Olivas, Figueroa was not allowed a chance to offer new disclosures at a resentencing hearing because his deficient (completely lacking) safety-valve disclosures resulted from his own choice not to fully disclose at his original sentencing hearing, not from any legal error of the district court.
B. Figueroa’s arguments are unavailing.
As stated, I believe that the Acostar-Olivas court “allowed” Acosta-Olivas to disclose additional safety-valve information before his resentencing “if’ he had failed to do so at the original sentencing hearing because of the district court’s legal error, but that it also otherwise disallowed any additional disclosures. Acostar-Olivas, 71 F.3d at 379-80. Yet Figueroa responds to this view with a rival interpretation. He reads Acostcir-Olivas’s language as “simply set[ting] a limit on the district court’s usual discretion to refuse repeated proffers from a defendant.” Appellant’s Br. at 21. Along the same line, he says that “[a]ll this Court was saying in Acostar-Olivas is that this usual discretion didn’t apply if Acosta *1308 Olivas’s failure to make a complete proffer could be innocently explained by his reliance on the district court’s interpretation. In that situation, the court was required to accept additional proffer.” Id. (emphasis in original). For a variety of reasons, I am unpersuaded by the reasoning underlying Figueroa’s creative argument.
First, starting with the basics, I agree that Galvon-Manzo held that “the resolution of disputes arising out of or relating to the debriefing process lies within the sound discretion of the district court” and that “the district court may exercise discretion to determine whether a particular defendant should be entitled to one, two or several briefing sessions.” 642 F.3d at 1267. But Galvon-Manzo set the time for exercising this discretion as sometime before the original sentencing hearing begins. Figueroa blithely overextends this discretion as also applying at resentencings. As mentioned, he explains AcostaOlivas’s remand condition as “simply set[ting] a limit on the district court’s usual discretion to refuse repeated proffers from a defendant.” Appellant’s Br. at 21. He offers no supporting authority that this “usual discretion” applies when a defendant first requests safety-valve relief at a resentencing and, not until then, discloses the needed information.
Second, Figueroa’s reading of the Acostar-Olivas court’s remand language is implausible. As mentioned, Figueroa asserts that Acostar-Olivas’s remand language impliedly says that the district court may also allow him the opportunity to disclose new information on remand even if it finds that he chose not to do so at resentencing without this reliance. See Appellant’s Br. at 21. The short answer is that this court in Acosta-Olivas did not say that. Instead, it spoke of allowing further disclosures at resentencing “if’ he would have provided the same information at his original sentencing absent the district court’s legal error. See Acostó-Olivas, 71 F.3d at 380. Acostar-Olivas’s tight remand language strongly supports a reading that, despite § 3553(f)(5)’s general prohibition against late disclosures, Acosta-Olivas got leeway to disclose safety-valve information after his original sentencing only if necessary to avoid any injustice caused by the district court’s legal error that he need not disclose the conduct of his coconspirators. See Flanagan, 80 F.3d at 147 (citing Acostar-Olivas and ruling that if defendant’s failure to fully disclose was not caused by the district court’s erroneous interpretation of the safety-valve statute, “the safety valve statute is not available” and the “district court should ... proceed to resentence the defendant without the benefit of such provision.”).
Third, we know that if Figueroa had tried to make safety-valve disclosures after his original sentencing hearing began, he would have run afoul of the general rule that “any and all disclosures for safety-valve purposes are timely only if they occur prior to the commencement of the sentencing hearing.” Galvon-Manzo, 642 F.3d at 1267. And had he tried to appeal on plain error that. he was entitled to safety-valve despite not raising it in the district court, he would have lost. See United States v. Williams, 480 Fed.Appx. 940, 942-43 (10th Cir.2012) (unpublished) (declining to reverse for plain error failure to award safety-valve relief even when substantial-assistance relief had been awarded under USSG § 5K1.1 “because a hearing on remand might show that the defendant who claims entitlement to a safety-valve reduction was in fact not so entitled.”). Figueroa’s “blink-off, blink-on” switch for safety-valve disclosures makes little sense, results in disparities, and has no solid law behind it.
*1309 Fourth, as the government notes, the Acostar-Olivas court had no reason to fear that the district court would treat AcostaOlivas poorly on remand. Appellee’s Br. at 22. Indeed, the district court had treated him too kindly the first time around (at least under the plain language of § 3553(f)(5)). Under these circumstances, it is hard to imagine a need to guard Acosta-Olivas against the district court’s depriving him of an opportunity to fully disclose the details of his offense. I do not believe that the remand was to guard against this long shot.
C. The Majority’s interpretation of Acosta-Olivas’s remand instruction is untenable.
The majority disputes that Acostar-Olivas’s remand instruction “impl[ies] a general prohibition against permitting a defendant to comply with § 3553(f) by providing the government information on remand before resentencing.” Maj. Op. at 1309-10. Yet without any analysis of the remand instruction’s language orathe context in which Acostar-Olivas used it, the majority dismisses the instruction by concluding that it “did not address ... whether the phrase ‘the sentencing hearing’ is limited to the original sentencing hearing.” Maj. Op. at 1309-10. The summary conclusion enables the majority to avoid addressing two problems. First, under Acostar-Olivas, the majority should acknowledge that a district court may at least sometimes refuse to consider safety-valve information disclosed after an initial sentencing but before a resentencing. This runs counter to the majority’s rule that § 3553(f)(5) always commands district courts on remand to allow defendants second opportunities to disclose additional safety-valve information and then to determine whether the delayed disclosures entitle defendants to safety-valve relief. Maj. Op. at 1296, 1300. The majority points to nothing in § 3553(f) enabling district courts to condition — as this court did in Acostar-Olivas — what the majority views as an absolute statutory right to present safety-valve information on remand. I see nothing in § 3553(f) doing so. Quite simply, the majority’s rule cannot accommodate Acostar-Olivas’s condition. If the majority’s rule is right, then Acostar-Olivas is wrong, and the majority should take the necessary steps to try to overrule it.
Second, the majority’s interpretation of Acostar-Olivas and § 3553(f)(5) leads to an odd result — and one unlikely to be Congress’s intended result. Under the majority’s reading, someone like Acosta-Olivas is barred from supplementing his safety-valve disclosure despite already having at least partially disclosed the necessary information and now wanting to provide the rest (perhaps his coconspirators had pleaded guilty after his initial sentencing hearing), but someone like Figueroa can provide nothing and later have his earlier complete silence rewarded with an opportunity to disclose fully. In evaluating the sensibility of such a safety-valve scheme, we need to remember that Figueroa had every chance to seek safety-valve relief at his original sentencing and to make the necessary safety-valve disclosures before that hearing started.[5] Figueroa’s total failure to disclose information — as opposed to Acosta-Olivas’s partial failure — should *1310 not propel Figueroa to greater relief on appeal.
1. The Majority’s cases do not compel its result.
To bolster its view that § 3553(f)(5) requires a district court to allow a previously silent defendant to disclose the necessary truthful information at a resentencing, the majority relies on Flanagan, 80 F.3d at 145 n. 1, for a footnote sentence saying that “without expressing an opinion regarding whether the [safety-valve] provision should apply at resentencing, we note that district courts have found the provision applies to a resentencing on remand.” Maj. Op. at 1302. This portion of Flanagan addresses whether defendants with pending appeals when § 3553(f) was enacted can qualify for safety-valve relief on remand. Additionally, Flanagan cited just one district court case in support, United States v. Buffington, 879 F.Supp. 1220, 1222 (N.D.Ga.1995). That case was before the district court for an original sentencing — there was no remand. Although not an issue at its sentencing hearing, the court remarked that “[a]t least one court, however, has found that the new law applies to a resentencing on remand from a court of appeals even if the initial sentence occurred prior to the effective date.” Id. (citing United States v. Ekwunoh, 888 F.Supp. 364, 365 (E.D.N.Y.1994)). This offers Figueroa no help because it only considers when § 3553(f) may apply when the original sentencing took place before § 3553(f) took effect.
In fact, as I explained earlier, Flanagan helps the government much more than it helps Figueroa. Flanagan did not allow the relief Figueroa now demands under § 3553(f)(5). Instead, that court simply allowed a remand on the question of safety-valve relief to ensure that Flanagan’s failure to establish safety-valve eligibility did not result from the district court’s erroneously placing the burden on the government to- show ineligibility. Flanagan, 80 F.3d at 147 (citing Acostar-Olivas, 71 F.3d at 380). Accordingly, all told, Flanagan supports my view of Acostad-Olivas and offers Figueroa no help.
The majority also contends that United States v. Mejia-Pimental, 477 F.3d 1100 (9th Cir.2007), supports its holding. Maj. Op. at 1302 n. 3. In that case, the court vacated the defendant’s sentence and remanded a third time. Mejia-Pimental, 477 F.3d at 1102. In the midst of these lengthy proceedings, all of Mejia-Pimental’s co-defendants, including an uncle, had pleaded guilty. Id. at 1102-03. Before his third sentencing hearing, Mejia-Pimental sought to “provide an in-person safety valve proffer” with the government. Id. at 1103. The government refused because Mejia-Pimental had previously lied and declined to proffer. Id. Soon before his third sentencing, Mejia-Pimental delivered a letter to the government detailing his involvement in the charged offenses and that of other persons too. Id. Although the government did not contest the truthfulness or completeness of the disclosure, the district court denied relief, concluding that Mejia-Pimental had not exhibited good-faith cooperation by awaiting pleas of his co-defendants before disclosing information. Id. The Ninth Circuit reversed, concluding that “the good faith inquiry focuses on the defendant’s cooperation in fully disclosing his knowledge of the charged offense conduct,- not on identifying a defendant’s pre-sentencing delays in providing this information.” Id. at 1106.
The majority can rightly cite this ease as one allowing a first effort at obtaining safety-valve relief at a resentencing hear *1311 ing.[6] But the case is not persuasive because the government never contested that issue,[7] leaving the court simply to allow it without analyzing any of § 3553(f)’s language. Rather, the Ninth Circuit focused on whether Mejia’s efforts to proffer were in “good-faith.” Id. at 1104-08. In addition, the Ninth Circuit did not need to consider the effect of Acosta-Olivas in its analysis. The same is true of the majority’s other cases in which the appellate court allowed safety valve eligibility to be considered for the first time on resentencing absent any objection from the government. See United States v. Purnell, 361 Fed.Appx.384, 385-86 (3d Cir.2010) (unpublished) (summarily stating that “because Purnell met with law enforcement authorities following remand, he qualified for the safety valve provision in 18 U.S.C. § 3553(f) and U.S.S.G. § 5015(a)....”); United States v. DeMott, 513 F.3d 55, 58 (2d Cir.2008) (although it is unclear from the opinion when the defendant first sought safety-valve relief, the court noted that “[t]he government has agreed to allow Day to make an additional safety valve proffer prior to a second resentencing.”).[8]
2. The Majority fails to undermine opposing cases.
In United States v. Ferret-Castellanos, 108 F.3d 339 (9th Cir.1996) (unpublished table decision), a drug-trafficking case, the Ninth Circuit required that a defendant’s disclosures under § 3553(f) occur before his original sentencing rather than allowing them before his two resentencings. Id. at *2. It found disclosures made before the resentencing had come “too late.” Id. The majority dismisses the case as being more concerned about the defendant’s truthfulness rather than untimeliness of his safety-valve disclosures. Maj. Op. at 1302. I do not read the case that way. After all, the court identified the issue before it as whether the defendant was ineligible for safety-valve relief “because he failed to disclose all information and evidence concerning his offense at his initial sentencing hearing.” FerretCastellanos, 108 F.3d at *1. I see nothing in Ferreir-Castellanos suggesting that the defendant’s disclosures at resentencing were untruthful. I simply see his explaining to the court his reason for delaying disclosure beyond his original sentencing hearing — “Ferret-Castellanos told the court that ‘for reasons of family loyalty and/or for legal reasons’ he did not tell the Government prior to trial that his uncle had given him the ear to drive.” Id.
In addition, the majority tries to undercut Ferretr-Castellanos by pointing to Me *1312 jia-Pimental, a later Ninth Circuit case that “appears inconsistent” with it. Maj. Op. at 1302 n. 3. I discussed Mejia-Pimental in some detail in the preceding section. Here, I would just note that Mejia-Pimental first tried to proffer before his original sentencing and then quit trying until soon before his third sentencing. Mejia-Pi-mental, 477 F.3d at 1102-03. The government did not challenge as untimely his attempt to gain safety-valve eligibility. Id. at 1103. Accordingly, the district and appellate court simply plowed forward without ever really considering the question. While I agree that the case does involve a defendant who tried to re-proffer at resentencing, I do not put much stock in the case as establishing a right to do so. Without the government’s objecting to timeliness, and without any analysis from the Ninth Circuit on that issue, I hesitate to treat Mejiar-Pimental as more persuasive than FerreUCastellanos, when Ferret-Castellanos at least resolved the issue after the government objected to the timeliness of the defendant’s disclosure of information.
I also downplay Mejia-Pimental’s persuasiveness because it cited — but did not discuss — another published Ninth Circuit decision speaking to our issue. In United States v. Real-Hernandez, 90 F.3d 356 (9th Cir.1996), Real-Hernandez was charged with offloading 13 duffel bags containing 971 pounds of marijuana. Id. at 358. Real-Hernandez pleaded guilty and, at his debriefing, he denied knowing that he had offloaded marijuana. Id. Two months later, Real-Hernandez was charged in a second case with loading about 1,800 pounds of marijuana on a boat two years earlier. Id. At his sentencing in the first case, Real-Hernandez sought safety-valve relief. Id. The government opposed this, pointing to the conduct underlying the second charge to show that at his proffer Real-Hernandez had not fully disclosed his criminal conduct. Id. at 359. Because Real-Hernandez was innocent until proven guilty, the court continued the sentencing hearing in the first case until the second case was resolved. Id.
Four months later, Real-Hernandez pleaded guilty in the second case a day after proffering to a separate government attorney and winning a safety-valve recommendation from him in the second case. Id. at 359. At his sentencing for the first case, the government argued that it was too late for Real-Hernandez to qualify for safety-valve relief. Id. Although the opinion is unclear on this point, it says that the district court agreed, stating that it would not “exercise the prerogative ... to go below the mandatory minimum in this case.” Id. at 360. The Ninth Circuit noted that it had “held in similar circumstances that such reasoning does not permit meaningful appellate review.” Id. (citations omitted). Because the district court had not given reasons for denying safety-valve relief, the Ninth Circuit vacated the sentence and remanded for resentencing. Id.
As I read Realr-Hemandez, the court remanded for the district court to determine whether he had fully disclosed information under § 3553(f)(5) at the time of his original senteúcing. It held that “on remand Real-Hernandez must show that he ‘truthfully provided] to the Government all information and evidence [he] ha[d] concerning the offense or offenses.’ ” Id. at 362. The court looked to the date of the original sentencing (April 17, 1995) to establish the “time of sentencing” under § 3553(c) and just a few lines later referred to “at sentencing” under § 3553(f). Id. at 360. Nothing suggests that the court thought its ordered resentencing hearing would fit under § 3553(f)(5)’s “not later than the time of the sentencing hearing” requirement, or allowed further *1313 disclosures of safety-valve information on remand. Based on Real-Hernandez, I cannot share the majority’s appraisal of Mejia-Pimental.[9]
III. Conclusion
I agree with the majority that § 3553(f) applies at resentencing hearings with the same force as at initial sentencing hearings. Accordingly, I agree that a district court must consider a defendant’s request for safety-valve relief, even if first made before resentencing. But I believe that a defendant is stuck with whatever information he disclosed before the original sentencing hearing started. Because Figueroa offered no safety-valve disclosures to the government before that time, the district court correctly denied Figueroa’s safety-valve request at the resentencing hearing. For the foregoing reasons, I respectfully dissent.

.Consistently with this view, I read § 3553(f)'s requirement that district courts consider safety-valve relief after the five listed showings “at sentencing” to mean at the sentencing and any resentencing. And I also agree that this use of "at sentencing” is "within the same sentence ” as § 3553(f)(5)’s use of "not later than the time of the sentencing hearing....” See Maj. Op. at 1306-07 (emphasis in original). But the majority must also recognize that subsection (f)'s "at sentencing” is separated by more than one hundred words — and four numbered conditions— from subsection (f)(5)’s "not later than the time of the sentencing hearing.” Because sentencings can be followed by resentencings, as here, I disagree with the majority that "at sentencing” and "the time of the sentencing hearing” must always refer to the same sentencing hearing. Indeed, if they do, one can forcefully argue that subsection (f)(5)’s quoted timing condition is superfluous.

. I agree with the majority that the district court did not make sufficient findings that it would have denied Figueroa safety-valve relief for failing to provide a full account of his and his co-conspirators' criminal activity. Maj. Op. at 1310-11. That said, the district court did express skepticism about whether Figueroa had indeed fully disclosed all information and evidence required under § 3553(f)(5). R. vol. Ill at 46-47. This issue remains alive on remand.

. As the majority notes, the government told the district court at resentencing that it considered Figueroa's disclosures timely, stating that "the case law seems to suggest safety valve can be considered for re-sentencing.” Maj. Op. at 1297; R. vol. Ill at 24, 29. At oral argument, the government's counsel explained its change in position as resulting from "fresh eyes on the district court ruling and further legal analysis of the district court’s ruling.”

. Section 3553(f) applies "to all sentences imposed on or after” September 23, 1994, ten days after the date of enactment. Pub.L. No. 103-322, § 80001(a), 108 Stat. 1796, 1985-86 (1994).

. I recognize that Figueroa now blames his trial counsel for his not seeking safety-valve relief at his original sentencing. As did the district court, I view this as an issue of ineffectiveness of counsel, one which is better addressed in a petition under 28 U.S.C. § 2255. We have no way of knowing the reason Figueroa did not proffer, and ineffective assistance of counsel is just one of the myriad of possibilities.

. On the other hand, the government could cite Mejia-Pimental for disallowing any additional disclosures at the latest resentencing on remand: “Therefore, on remand, the district court must consider whether that final written proffer was in fact truthful and complete.” Id. at 1109.

. Rather, the government opposed safety-valve relief because the government already knew the information the defendant would have provided. Id. at 1104-05.

. Consistent with that, I do not believe that United States v. Washman, 128 F.3d 1305, 1306 (9th Cir. 1997), disallows a defendant from disclosing additional safety-valve information to the government before a resentencing, despite the district court’s deciding on remand that it would review safety-valve eligibility on the record as it stood before the remand. The Ninth Circuit had no reason to analyze the timeliness of pre-resentencing disclosures because the defendant had not raised that as an issue. Id. at 1308. Similarly, although United States v. Schreiber, 191 F.3d 103, 106 (2d Cir. 1999), certainly supports my position when it says that "[t]he plain words of the statute provide only one deadline for compliance,” I recognize that it concerned the timeliness of safety-valve disclosures before an initial sentencing and not a resentencing.

. The majority cites one case opposing its interpretation of § 3553(f)(5). Maj. Op. at 1302 n. 2. In United States v. Giraldo, 52 Fed.Appx. 584, 585-88 (3d Cir.2002) (unpublished), the Third Circuit rejected the defendant's argument that he could make a timely proffer at resentencing, when the defendant first requested safety-valve relief. At the same time, the Third Circuit looked to its own mandate rule to conclude that, "under the circumstances presented . .. [the defendant] waived his ability to avail himself of the Safety Valve provision.” Id. at 587-88.